UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. CURRAN, III, | : | CIVIL NO: 1:12-CV-00750 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| MARK ZINNAMOSCA & | : | |
| ASSOCIATES, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, John F. Curran, III, brought this action against four defendants raising an array of state law and federal claims. We conclude that Curran has failed to establish personal jurisdiction over one of the defendants and that he has failed to state a federal claim upon which relief can be granted against any of the other defendants. Accordingly, we recommend that the defendants' motions to dismiss be granted and that the complaint be dismissed. We also recommend, however, that Curran be given leave to file an amended complaint as to two of the defendants. Further, we recommend that Curran's motions for default judgment be denied.

## II. Background and Procedural History.

Curran filed a complaint naming the following as defendants: (1) Mark Zinnamosca & Associates; (2) Mark Zinnamosca, CPA; (3) Kelly Utz; and (4) the University of Maryland-University College.[1] Curran alleges that both he and Zinnamosca are citizens and residents of the state of Maryland, that Zinnamosca & Associates is a corporation with a principal place of business in Maryland, that Utz is a citizen and resident of Florida, and that the University of Maryland-University College is an educational institution with its principal location in Maryland. Curran contends that the Court has subject-matter jurisdiction under 28 U.S.C. §1331 as he seeks to present federal statutory claims against the defendants.

---

[1] By way of additional background, in November of 2011, Curran filed a complaint in *Curran v. Carbon Spyder*, 1:11-CV-02127 (M.D. Pa.), naming twelve defendants including Mark Zinnamosca & Associates, Mark Zinnamosca, CPA, and the University of Maryland-University College. In March of 2012, Judge Kane dismissed that complaint for lack of subject-matter jurisdiction, but she gave Curran leave to amend. 1:11-CV-02127, *Doc. 46.* Curran then filed three separate documents entitled "amended complaints." *See id. at Doc. 48.* Only one of those documents had the case number from *Curran v. Carbon Spyder. Id.* Curran also included a letter along with his "amended complaints" stating that he broke the case down into separate matters. *Id.* Magistrate Judge Smyser and the Clerk of Court discussed how to proceed, and it was agreed that the documents would be filed in separate cases. *Id.* One of the amended complaints was filed in *Curran v. Carbon Spyder*, 1:11-CV-02127 (M.D. Pa.). The other two amended complaints were filed as new cases: *Curran v. M&T Bank Corp.,* 1:12-CV-00749 (M.D.Pa.); and this case, *Curran v. Mark Zinnamosca & Assoc.,* 1:12-CV-00750 (M.D.Pa.). Thus, although the complaint in this case is titled "amended complaints," it is the original complaint in this case, and so despite its title, we refer to it as the complaint.

## A. Allegations Regarding Mark Zinnamosca & Associates and Mark Zinnamosca, CPA.

Although Curran does not clearly plead his claims, he asserts that he is proceeding against Mark Zinnamosca & Associates and Mark Zinnamosca, CPA "for fraud, malpractice, breach of fiduciary responsibility, slander and libel." *Doc. 1* at 2. Curran also claims that Zinnamosca[2] violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

Curran alleges that he is the founder and 67.3% owner of Gargoyles, Inc., a Delaware corporation. He alleges that Zinnamosca was the chief financial officer of Gargoyles, Inc., until his services were terminated. Tracking the language of 18 U.S.C. § 1030(a)(4), Curran alleges in conclusory language that Zinnamosca "knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered the intended fraud." *Doc. 1* at 2, ¶4. Curran alleges that Zinnamosca performed work on a computer network and emailed that work to him. Curran also alleges that Zinnamosca fraudulently completed and submitted "via an electronic and computer based methodology" tax filings on behalf of Curran and Gargoyles, Inc. *Id.* According to Curran, the "value of such use in perpetrating fraud far exceeds $5,000." *Id.*

---

[2] Although Curran names both Mark Zinnamosca & Associates and Mark Zinnamosca, CPA as defendants, he does not clearly differentiate between the two defendants.

3

Curran also alleges that Zinnamosca provided testimony to the Maryland Attorney General, and he alleges that the attorney for the plaintiff in the case of *Shafik v. Curran*, 1:09-CV-2469 (M.D. Pa.), used that testimony. According to Curran, Zinnamosca's testimony was untrue, but Curran does not clearly allege the substance of Zinnamosca's testimony. Rather, he cryptically alleges that "no such cautions were ever made either to the Plaintiff or the Board of Directors for Gargoyles, Inc., the company that the Plaintiff found and is the majority shareholder." *Doc. 1* at 3, ¶5. According to Curran, Zinnamosca's purportedly fraudulent statements negatively impacted the value of Curran's ownership in Gargoyles, Inc.

Curran further alleges that Zinnamosca committed malpractice. According to Curran, he sold some of his shares in Gargolyes, Inc. to private buyers, but Zinnamosca incorrectly recorded those sales in the financial records of Gargoyles, Inc. as separate issuances of shares of stock by Gargoyles, Inc. Curran alleges that that resulted in the loss of value of his ownership position in Gargoyles, Inc. and a subsequent investigation by authorities. He alleges that Zinnamosca made false statements in an effort to hide his alleged malpractice, and Zinnamosca made those false statements in an effort to undermine his character. According to Curran, this caused him irreparable harm and significantly diminished the value of his investment.

Curran is seeking compensatory and punitive damages from Mark Zinnamosca & Associates and Mark Zinnamosca, CPA.

### B. Allegations Regarding Kelly Utz.

Curran asserts that he is proceeding against Utz for fraud, and he presents a claim against Utz under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Again, tracking the language 18 U.S.C. § 1030(a)4), Curran alleges in conclusory language that Utz "knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered the intended fraud." *Doc. 1* at 4, ¶3. According to Curran, the "value of such use in perpetrating fraud far exceeds $5,000." *Id.*

Curran alleges that, according to a digital assessment of Gargoyles, Inc.'s "information system and server," Utz , without authorization, removed numerous documents from Gargoyles, Inc., created other documents, and fraudulently represented that Curran had created those documents. Curran identifies dates when Utz allegedly scanned documents and emailed them to her home computer and deleted documents on Gargoyle's "system." According to Curran, on May 19, 2010, he told his attorney that he had discovered the theft of various items from his office but that he was unable to determine when the items had been taken. Curran alleges that the theft was reported and investigated, and his office was dusted for

fingerprints. According to Curran, on May 20, 2010, during a Board meeting, Zinnamosca, who at the time was Gargoyles, Inc.'s accountant and who was Utz's former boss, gave the CEO of Gargoyles a thumb drive containing an image of the company's system and files along with the CEO's personal tax records. Curran alleges that a forensic analysis of the thumb drive determined that Utz had downloaded the information contained on the thumb drive during the period from 2/18/10 through 3/1/10.

Curran is seeking compensatory and punitive damages from Utz.


**C. Allegations Regarding the University of Maryland-University College.**

Curran asserts that he is proceeding against the University of Maryland-University College ("University of Maryland" or "University") "for fraud, breach of contract, slander and liable [sic]." Curran alleges that he completed the degree requirements for a Bachelor of Science degree from the University of Maryland, that he applied for graduation, and that he received his diploma. Nevertheless, according to Curran, an employee of the University, orally and in writing, stated that he did not receive his diploma from the University and that he must have fabricated or forged his diploma. Curran alleges that those statements were baseless, inflammatory, and damaging.

Curran is seeking compensatory and punitive damages against the University as well as injunctive relief requiring the University to correct its records to reflect that he completed the degree requirements and received his diploma.

### III.  The Motion to Dismiss Filed by Mark Zinnamosca & Associates and Mark Zinnamosca, CPA.

Mark Zinnamosca & Associates and Mark Zinnamosca, CPA filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6)  or for a more definite statement pursuant to Fed.R.Civ.P. 12(e).  After the Zinnamosca defendants filed a brief in support of that motion, we ordered Curran to file, on or before March 29, 2013, a brief in opposition to the motion in accordance with Local Rule 7.6. Rather than filing a brief in opposition as ordered by the Court, on April 2, 2013, Curran filed a response to the motion asserting that because the Zinnamosca defendants did not attach a certificate stating whether he concurred in the motion in accordance with Local Rule 7.1, the motion is incomplete and, thus, should be denied.  We reject Curran's argument that the motion should be denied because the Zinnamosca defendants failed to attach a certificate of concurrence or nonconcurrence with the motion.  While the Zinnamosca defendants failed to comply with Local Rule 7.1, Curran was not prejudiced by that failure.  We assumed that the Curran did not concur in the motion, and we specifically ordered Curran to file a brief in opposition to the motion.  Curran thus had an opportunity

to oppose the motion on the merits, but he failed to take advantage of that opportunity. And he failed to comply with a court order specifically ordering him to file a brief in opposition. There is no basis to deny the motion to dismiss merely because the motion was not accompanied by a certificate of concurrence or nonconcurrence. Thus, we proceed to address the merits of the motion.

### A. Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of

Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,* 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B. The Complaint Fails to State a Claim Under the Computer Fraud and Abuse Act Upon Which Relief Can Be Granted Against the Zinnamosca Defendants.**

Curran seeks to bring a claim against the Zinnamosca defendants under 18 U.S.C. § 1030(a)(4), a provision of the Computer Fraud and Abuse Act. As relevant here, the Computer Fraud and Abuse Act provides:

> Whoever. . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . shall be punished as provided in subsection (c) of this section.

18 U.S.C.A. § 1030(a)(4). Although the Act is primarily a criminal statute, it also contains a provision providing for a civil action in certain limited situations where a person "suffers damage or loss by reason of a violation of" the Act. 18 U.S.C.A. § 1030(g).[3]

_____

[3] Section 1030(g) provides in full:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent

A claim under 18 U.S.C. § 1030(a)(4) "has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005)(quoting 18 U.S.C.A. § 1030(a)(4)).

Tracking the language of 18 U.S.C. § 1030(a)(4), Curran alleges in conclusory language that Zinnamosca "knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered the intended fraud." *Doc. 1* at 2, ¶4. This allegation, however, is nothing more than the type of "formulaic recitation of the elements of a cause of action" that fails to meet the pleadings starndards. *Twombly*, 550 U.S. at 555.

---

design or manufacture of computer hardware, computer
software, or firmware.
Of the subclauses of §1030(c)(4)(A)(i) mentioned, the only one that it appears
could have any possible application in this case is subclause (I), which involves
conduct involving "loss to 1 or more persons during any 1-year period . . .
aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Curran also alleges that Zinnamosca performed work on a computer network and emailed that work to him and that Zinnamosca fraudulently completed and submitted "via an electronic and computer based methodology" tax filings on behalf of Curran and Gargoyles, Inc. *Doc. 1* at 2, ¶4. According to Curran, the "value of such use in perpetrating fraud far exceeds $5,000." *Id.* These allegations fail to allege facts from which it can reasonably be inferred that the Zinnamosca defendants violated the 18 U.S.C. § 1030(a)(4). First and foremost, there are no factual allegations that the Zinnamosca defendants accessed a "protected computer"[4] without authorization or in excess of their authorization. The allegation that the Zinnamosca defendants created work on a computer and emailed that work to Curran is not sufficient to raise an inference that they accessed a

---

[4] The Computer Fraud and Abuse Act defines a "protected computer" as a computer—

> **(A)** exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or
> **(B)** which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States;

18 U.S.C.A. § 1030(e)(2).

protected computer without authorization or in excess of authorization. Nor is the allegation that the Zinnamosca defendants fraudulently completed and submitted tax filings on behalf of Curran and Gargoyles, Inc. sufficient to raise an inference that they accessed a protected computer without authorization or in excess of authorization. Moreover, there are no factual allegations regarding the nature of any purported fraud. Similarly, there are no allegations that the defendants received anything of value. Given the lack of factual allegations, the complaint fails to state a claim under the Computer Fraud and Abuse Act upon which relief can be granted against the Zinnamosca defendants. Accordingly, we will recommend that that claim be dismissed.

### C. Since the Federal Claim Should Be Dismissed, the Court Should Decline to Exercise Supplemental Jurisdiction over the State Law Claims Against the Zinnamosca Defendants.

The remaining claims against the Zinnamosca defendants are Curran's state law claims over which this court has supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the court disposes of the federal claims. Accordingly, we recommend that, in the absence of a viable federal claim, the court decline to exercise supplemental jurisdiction over the state law claims against the Zinnamosca defendants.

### D.  Curran Should Be Granted Leave to Amend as to the Zinnamosca Defendants.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The

court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

We cannot say that amendment of the Computer Fraud and Abuse Act claim against the Zinnamosca defendants would be inequitable or futile in this case. Thus, we will recommend that Curran be granted leave to file an amended complaint. Any amended complaint shall be complete in all respects. It shall be a new pleading that stands by itself as an adequate complaint without reference to the complaint already filed. It shall not incorporate by reference any of the previous complaint. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

## IV. The Motion to Dismiss Filed by Kelly Utz.

Defendant Utz filed a motion to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(2) and a brief in support of that motion. We then ordered Curran to file, on or before May 9, 2013, a brief in opposition to the motion in accordance with Local Rule 7.6. Rather than filing a brief in opposition as ordered by the Court, on May 15, 2013, Curran filed a response to the motion asserting that because Utz did not attach a certificate stating whether she concurred in the motion in accordance with Local Rule 7.1, the motion is

incomplete and, thus, should be denied. As before, we reject Curran's argument that the motion should be denied because the defendant failed to attach a certificate of concurrence or nonconcurrence with the motion. While Utz failed to comply with Local Rule 7.1, Curran was not prejudiced by that failure. We assumed that the Curran did not concur in the motion, and we specifically ordered Curran to file a brief in opposition to the motion. Curran thus had an opportunity to oppose the motion on the merits, but he failed to take advantage of that opportunity. And he failed to comply with a court order specifically ordering him to file a brief in opposition. There is no basis to deny the motion to dismiss merely because the motion was not accompanied by a certificate of concurrence or nonconcurrence. Thus, we proceed to address the merits of the motion.

Although Utz rasied lack of subject-matter jurisdiction and lack of personal jurisdiction in her motion, she only briefed the personal jurisdiction issue. We note, however, that the Court has subject-matter jurisdiction given that Curran raises a claim under Computer Fraud and Abuse Act against Utz. We turn now to personal jurisdiction.

A defendant may raise the defense of lack of personal jurisdiction in a motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(2). "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of*

*Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Unless the court holds an evidentiary hearing, at the motion-to-dismiss stage the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under a prima facie standard, "the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor," but "the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence." *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 476 (3d Cir. 2011). The plaintiff establishes a prima facie case "by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)(quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434 (3d Cir.1987)).

Federal Rule of Civil Procedure 4 authorizes a federal court to assert personal jurisdiction over a nonresident defendant to the extent permissible under the law of the state where the district court sits. *Id.* at 1221. The forum state in this case is Pennsylvania, and Pennsylvania law permits courts within Pennsylvania to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States" and provides that jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United

States." 42 Pa.C.S.A. § 5322(b). Thus, this court may properly exercise jurisdiction over a defendant as long as the exercise of that jurisdiction does not violate the due process rights of the defendant. *Mellon,* 960 F.2d at 1221.

Proceeding to the constitutional inquiry, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.,* 537 F.3d 290, 299-300 (3d Cir. 2008)(quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* at 300 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

There are two types or personal jurisdiction—general jurisdiction and specific jurisdiction. *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Id.* On the other hand, even in the absence of such systematic and continuous contacts with the forum state, "[s]pecific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Id.* "The central concern of [the] jurisdictional inquiry is the relationship among the defendant, the forum, and the

litigation." *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985). The court conducts a three-part inquiry to determine whether it has specific jurisdiction over the defendant. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King,* 471 U.S. at 472). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Third, if the court finds that the prior requirements are met, it may consider additional factors to ensure that exercising jurisdiction would be consistent with "'fair play and substantial justice.'" *Id.* (quoting *Burger King, supra,* 471 U.S. at 476 (quoting *Int'l Shoe, supra,* 326 U.S. at 320)).

In this case, Curran alleges that Utz is a citizen and resident of Florida, and there are no allegations in the complaint suggesting that the events underlying the claim against Utz occurred in Pennsylvania or that the claim against Utz has any connection whatsoever to Pennsylvania. Thus, Curran has not established a prima facie case of specific jurisdiction over Utz. Further, Curran has not presented any allegations, argument, or evidence that Utz had systematic and continuous contacts with Pennsylvania. Thus, he has not established a prima facie case of general jurisdiction over Utz. And so we will recommend that Utz's motion to dismiss for lack of personal jurisdiction be granted.

## V.  The Motion to Dismiss Filed by the University of Maryland-University College.

The Univeristy of Maryland-University College contends that the Court lacks subject-matter jurisdiction because the complaint does not set forth any cognizable federal claims against it.

"[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case ." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89 (1998)(emphasis in original).  Subject-matter jurisdiction is not defeated by the possibility that the averments of the complaint might fail to state a cause of action on which the plaintiff could actually recover. *Id.*  "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)).

Althlough Curran attempts to assert a claim against the University under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, he cannot premise a federal claim on FERPA, which prohibits "the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons" because FERPA does not create any personal

rights that can be enforced in a private right of action or through 42 U.S.C. § 1983.

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 276, 287-290 (2002)(stating that "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights").

Nor can Curran base a claim against the University of Maryland on the Privacy Act, which limits the conditions under which an agency may disclose records of an individual, which provides that an agency shall maintain its records with "such accuracy" "as is reasonably necessary to assure fairness to the individual," and which provides that generally prior to disclosing such records an agency shall "make reasonable efforts to assure that such records are accurate . . . for agency purposes." 5 U.S.C. §¶ 552a(b), 552a(e)(5) & 552a(e)(6). For purposes of the relevant sections of the Privacy Act, an agency is defined as "each authority of the Government of the United States" with certain exceptions. 5 U.S.C. §§ 552a(a), 552(f), § 551(1). The relevant sections of the Privacy Act, therefore, only apply to federal government agencies. *See N'Jai v. Pittsburgh Bd. of Pub. Educ.,* 487 F. App'x 735, 737 (3d Cir. 2012). Accordingly, the complaint fails to state a Privacy Act claim upon which relief can be granted against the University of Maryland, which is not a federal agency.[5]

---

[5] We note that Section 7 of the Privacy Act, which is not codified but is set forth as a note following 5 U.S.C. § 552a, provides that "[i]t shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." "By its express terms, § 7 applies to

In response to the University's motion to dismiss, Curran argues that the University entered into several contracts with various government entities to provide education to members of the armed forces, and he contends that the University's failure to comply with those contracts provides for subject-matter jurisdiction. Curran's argument, however, provides no basis for a claim under FERPA or the Privacy Act.

Given that Curran's asserted claims under the Privacy Act and FERPA are so clearly foreclosed by prior decisions of the Supreme Court or otherwise completely devoid of merit, they do not involve a federal controversy. Nevertheless, because Curran pleaded federal clams under the Computer Fraud and Abuse Act against other defendants, we cannot say that the Court lacks subject-matter jurisdiction in this case. Nevertheless, the complaint fails to state a federal claim upon which relief can be granted against the University. And in the absence of a federal claim, there is no reason for the court to exercise supplemental jurisdiction over the state law claims against the University.

---

federal, state, and local agencies." *Gonzalez v. Vill. of W. Milwaukee,* 671 F.3d 649, 662 (7th Cir. 2012). Because this case does not deal with a denial based on Curran's refusal to disclose his social security number, Section 7 does not apply.

## VI. Curran's Motions for Default Judgment.

Curran filed a motion for a default judgment against Mark Zinnamosca & Associates and Mark Zinnamosca, CPA contending that because they did not attach to their motion to dismiss a certificate stating whether he concurred in the motion in accordance with Local Rule 7.1, the motion was incomplete and thus a default judgment should be entered against them.  Curran also filed a motion for a default judgment against the University of Maryland-University College on the basis that the University filed its motion to dismiss late.

After a default is entered against a party, the court may, pursuant to Fed.R.Civ.P. 55(b)(2), enter a default judgment against a party how has failed to plead or otherwise defend.  "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.).  "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In this case, Curran is not entitled to a default judgment. First, he failed to obtain entry of a default. *See Limehouse v. Delaware*, 144 F. App'x 921, 923 (3d Cir. 2005)("[T]he District Court properly denied the motion because Limehouse failed to obtain entry of default prior to seeking a default judgment."). Even if a default had been entered, however, a default judgment is not warranted. As set forth above, although the Zinnamosca defendants failed to comply with Local Rule 7.1, Curran was not prejudiced by that failure. We assumed that the Curran did not concur in the motion to dismiss, and we specifically ordered Curran to file a brief in opposition to the motion. Curran thus had an opportunity to oppose the motion to dismiss on the merits, but he failed to take advantage of that opportunity. Similarly, Curran was not prejudice by the University's late filing. Moreover, as discussed above, the complaint should be dismissed. Accordingly, there is no basis for a default judgment against either the Zinnamosca defendants or the University.

## VII. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that Curran's motions (docs. 15 & 17) for default judgment be denied, that the defendants' motions (docs. 9, 19, & 26) to dismiss be granted, and that Curran be granted leave to amend only as to the Zinnamosca defendants.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of January, 2014.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge