UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. CURRAN,III, | : | CIVIL NO: 1:12-CV-00750 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| MARK ZINNAMOSCA & ASSOCIATES, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

Currently pending is a motion filed by defendants Mark Zinnamosca, CPA and Mark Zinnamosca & Associates (the Zinnamosca defendants) to dismiss the second amended complaint as well as a motion filed by the plaintiff, John F. Curran, III, to withdraw his second amended complaint without prejudice and with a right to refile at a later date. For the reasons discussed below, we recommend that the motion to dismiss filed by the Zinnamosca defendants be granted, that Curran's federal claims against those defendants be dismissed with prejudice, and that the Court decline to exercise supplemental jurisdiction over the state law claims against the Zinnamosca defendants. We also recommend that Curran's motion to withdraw without prejudice be granted as to the defendants other than the Zinnamosca defendants.

**II. Background and Procedural History.**

Curran filed a complaint naming the following as defendants: (1) Mark Zinnamosca & Associates; (2) Mark Zinnamosca, CPA; (3) Kelly Utz; and (4) the University of Maryland-University College.[1] Curran alleged that both he and Zinnamosca are citizens and residents of the state of Maryland, that Zinnamosca & Associates is a corporation with a principal place of business in Maryland, that Utz is a citizen and resident of Florida, and that the University of Maryland-University College is an educational institution with its principal location in Maryland.

---

[1] By way of additional background, in November of 2011, Curran filed a complaint in *Curran v. Carbon Spyder*, 1:11-CV-02127 (M.D. Pa.), naming twelve defendants including Mark Zinnamosca & Associates, Mark Zinnamosca, CPA, and the University of Maryland-University College. In March of 2012, Judge Kane dismissed that complaint for lack of subject-matter jurisdiction, but she gave Curran leave to amend. 1:11-CV-02127, *Doc. 46*. Curran then filed three separate documents entitled "amended complaints." *See id. at Doc. 48.* Only one of those documents had the case number from *Curran v. Carbon Spyder*. *Id.* Curran also included a letter along with his "amended complaints" stating that he broke the case down into separate matters. *Id.* Magistrate Judge Smyser and the Clerk of Court discussed how to proceed, and it was agreed that the documents would be filed in separate cases. *Id.* One of the amended complaints was filed in *Curran v. Carbon Spyder*, 1:11-CV-02127 (M.D. Pa.). The other two amended complaints were filed as new cases: *Curran v. M&T Bank Corp.*, 1:12-CV-00749 (M.D.Pa.); and this case, *Curran v. Mark Zinnamosca & Assoc.*, 1:12-CV-00750 (M.D.Pa.). Thus, although the complaint in this case was titled "amended complaints," it was the original complaint in this case. Nonetheless, when Curran filed an amended complaint, he titled it as his second amended complaint, and the Zinnamosca defendants also refer to the amended complaint as the second amended complaint. Because the parties refer to the amended complaint as the second amended complaint, we do so as well.

Curran contended that the Court had subject-matter jurisdiction under 28 U.S.C. §1331 as he sought to present federal statutory claims against the defendants.

We concluded that Curran failed to establish personal jurisdiction over defendant Utz and that he failed to state a federal claim upon which relief can be granted against any of the other defendants. Accordingly, we recommended that the defendants' motions to dismiss be granted and that the complaint be dismissed. We also recommend, however, that Curran be given leave to file an amended complaint as to two of the defendants—Mark Zinnamosca, CPA and Mark Zinnamosca & Associates. Judge Kane adopted that recommendation.

On May 23, 2014, Curran filed a second amended complaint. The second amended complaint names as defendants: (1) Mark Zinnamosca & Associates; (2) Mark Zinnamosca, CPA; (3) Kelly Utz; (4) the University of Maryland-University College; (5) Saul Ewing, LLP; (6) Kurt Ehresman; and (7) Thomas Baker Peace. Because the claims against defendants Utz and the University of Maryland had previously been dismissed with prejudice, Judge Kane ordered the claims against those defendants stricken from the second amended complaint. Curran has not filed a return of service showing that he served the second amended complaint on defendants Saul Ewing, LLP, Ehresman, and Peace.

The Zinnamosca defendants filed a motion to dismiss the second amended complaint and a brief in support of that motion. Although we ordered Curran to

file a brief in opposition to that motion, he has failed to do so. Instead, he filed a motion to withdraw his second amended complaint without prejudice and with the right to refile at a later date. We recommend that Curran's motion to withdraw be granted as to the claims against Saul Ewing, LLP, Ehresman, and Peace. But because Curran has already filed multiple complaints against the Zinnamosca defendants and those defendants have appeared and defended this case, the claims against the Zinnamosca defendants should not be dismissed without prejudice. Rather, for the reasons discussed below, we recommend that the Zinnamosca defendants' motion to dismiss the second amended complaint be granted and that Curran not be granted further leave to amend as to those defendants.

**III. Claims and Allegations Against the Zinnamosca Defendants.**

Curran asserts fraud, malpractice, breach of fiduciary duty, and deceptive trade practices claims against the Zinnamosca defendants. In addition, Curran appears to seek to bring a claim against the Zinnamosca defendants under 18 U.S.C. § 1030(a)(4), a provision of the Computer Fraud and Abuse Act. Curran states in his second amended complaint that the Court has jurisdiction under both 28 U.S.C. § 1331(federal-question jurisdiction) and § 1332 (diversity jurisdiction). He now alleges that he is a citizen of North Carolina, that Mark Zinnamosca is a

citizen of Maryland, and that Mark Zinnamosca & Associates is corporation that was formed in Delaware and that has its principal place of business in Maryland.[2]

Curran alleges that he is the founder and 67.3% owner of Gargoyles, Inc., a Delaware corporation. He alleges that Zinnamosca was the chief financial officer of Gargoyles, Inc., until his services were terminated. Tracking the language of 18 U.S.C. § 1030(a)(4), Curran alleges in conclusory language that Zinnamosca[3] "knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered the intended fraud." *Doc. 44* at 6, ¶4. Curran alleges that all work done on his behalf was done on a computer network and emailed to him. In addition to referring to § 1030, Curran refers to the International Traffic in Arms Regulations (ITAR). Curran also alleges that tax filings on his behalf and on behalf of Gargoyles, Inc. were fraudulently completed and submitted via "an electronic and computer based methodology." *Id.* According to Curran, the "value of such use in perpetrating fraud far exceeds $5,000." *Id.*

Curran also alleges that Zinnamosca provided testimony to the Maryland Attorney General, and he alleges that the attorney for the plaintiff in the case of

---

2 Additionally, Curran alleges that Saul Ewing, LLP has its corporate headquarters in Pennsylvania, that Ehresman is a citizen of Pennsylvania, and that Peace is a citizen of Maryland.

3 Actually, Curran simply alleges that the "Defendant" did these things without specifying to which defendant he is referring. Construing the second amended complaint liberally, we assuming that he is referring to Mark Zinnamosca.

*Shafik v. Curran*, 1:09-CV-2469 (M.D. Pa.), used that testimony. According to Curran, Zinnamosca's testimony was untrue, but Curran does not clearly allege the substance of Zinnamosca's testimony. Rather, he cryptically alleges that "no such cautions were ever made either to the Plaintiff or the Board of Directors for Gargoyles, Inc., the company that the Plaintiff found and is the majority shareholder." *Doc. 44* at 6, ¶5. According to Curran, Zinnamosca's purportedly fraudulent statements negatively impacted the value of Curran's ownership in Gargoyles, Inc.

Curran alleges that subsequent review of Zinnamosca's work by two book keepers and a junior accountant demonstrate gross malpractice. According to Curran, he sold some of his shares in Gargolyes, Inc. to private buyers, but Zinnamosca incorrectly recorded those sales in the financial records of Gargoyles, Inc. as separate issuances of shares of stock by Gargoyles, Inc. Curran alleges that that resulted in the loss of value of his ownership position in Gargoyles, Inc. and a subsequent investigation by authorities.

Curran also alleges that although Gargoyles, Inc. was created in November of 2008, using a corporate purchase transaction for an entirely different corporation, Zinnamosca erroneously recorded the creation date of Gargoyles, Inc. as occurring in 2006. According to Curran, this had negative ramifications. Curran alleges that Zinnamosca used the computer system of Gargoyles, Inc. "to

perpetrate such fraud." *Doc. 44* at 8, ¶9. Curran alleges that the computer systems of Gargoyles, Inc. contained numerous "designs, technology and corporate trade secrets," some of which are regulated by ITAR. *Id.* Curran alleges that the purportedly negligent acts of Zinnamosca in using such systems was first discovered in March of 2013, while Curran was preparing for his criminal trial. According to Curran, the prosecutor in the criminal case against him used testimony from Zinnamosca to secure an indictment. Curran alleges that Zinnamosca knowingly provided erroneous accounting reports during his testimony before the grand jury. He also alleges that Zinnamosca covered up his purported negligence and further damaged Curran by providing such fraudulent reports. Curran further alleges that Zinnamosca subsequently produced knowingly false statements in an effort to hide his alleged malpractice, and Zinnamosca made those false statements in an effort to undermine Curran's character. According to Curran, this caused him irreparable harm and significantly diminished the value of his investment.

Curran is seeking compensatory and punitive damages from Mark Zinnamosca & Associates and Mark Zinnamosca, CPA.

## IV. Discussion.

### A. Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme

> Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court,

however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B. The Second Amended Complaint Fails to State a Federal Claim Upon Which Relief Can Be Granted Against the Zinnamosca Defendants.**

Curran appears to seek to bring a claim against the Zinnamosca defendants under 18 U.S.C. § 1030(a)(4), a provision of the Computer Fraud and Abuse Act. As relevant here, the Computer Fraud and Abuse Act provides:

> Whoever. . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of

> the computer and the value of such use is not more than $5,000 in any 1-year period . . . shall be punished as provided in subsection (c) of this section.

18 U.S.C.A. § 1030(a)(4). Although the Act is primarily a criminal statute, it also contains a provision providing for a civil action in certain limited situations where a person "suffers damage or loss by reason of a violation of" the Act. 18 U.S.C.A. § 1030(g).[4]

A claim under 18 U.S.C. § 1030(a)(4) "has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with

[4] Section 1030(g) provides in full:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

Of the subclauses of §1030(c)(4)(A)(i) mentioned, the only one that it appears could have any possible application in this case is subclause (I), which involves conduct involving "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005)(quoting 18 U.S.C.A. § 1030(a)(4)).

The allegations in the second amended complaint are substantially the same as the allegations in the original complaint, which the Court has already determined failed to state a claim upon which relief can be granted. Tracking the language of 18 U.S.C. § 1030(a)(4), Curran alleges in conclusory language that Zinnamosca "knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered the intended fraud." *Doc. 44* at 6, ¶4. This allegation, however, is nothing more than the type of "formulaic recitation of the elements of a cause of action" that fails to meet the pleadings starndards. *Twombly*, 550 U.S. at 555.

Curran also alleges that Zinnamosca performed work on a computer network and emailed that work to him and that Zinnamosca fraudulently completed and submitted "via an electronic and computer based methodology" tax filings on behalf of Curran and Gargoyles, Inc. *Doc. 44* at 6, ¶4. According to Curran, the "value of such use in perpetrating fraud far exceeds $5,000." *Id.* These allegations fail to allege facts from which it can reasonably be inferred that the Zinnamosca defendants violated the 18 U.S.C. § 1030(a)(4). First and foremost, there are no

factual allegations that the Zinnamosca defendants accessed a "protected computer"[5] without authorization or in excess of their authorization. The allegation that the Zinnamosca defendants created work on a computer and emailed that work to Curran is not sufficient to raise an inference that they accessed a protected computer without authorization or in excess of authorization. Nor is the allegation that the Zinnamosca defendants fraudulently completed and submitted tax filings on behalf of Curran and Gargoyles, Inc. sufficient to raise an inference that they accessed a protected computer without authorization or in excess of authorization. Moreover, Curran has not clearly alleged the nature of any purported fraud. Similarly, there are no allegations that the defendants received anything of value. And Curran's passing reference to ITAR does not support a

[5] The Computer Fraud and Abuse Act defines a "protected computer" as a computer—

> **(A)** exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or
>
> **(B)** which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States;

18 U.S.C.A. § 1030(e)(2).

claim under the Computer Fraud and Abuse Act. Given the lack of factual allegations, the second amended complaint fails to state a claim under the Computer Fraud and Abuse Act upon which relief can be granted against the Zinnamosca defendants. Accordingly, we will recommend that that claim be dismissed.

**C. Curran's Purported Change in Citizenship Does Not Support Diversity Jurisdiction.**

Curran asserts fraud, malpractice, breach of fiduciary duty, and deceptive trade practices claims against the Zinnamosca defendants, and Curran asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332.

The court has diversity jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Section 1332 requires complete diversity. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). There is complete diversity only when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Id.* "For diversity purposes, citizenship of the parties is determined as of the time the complaint was filed." *Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003).

In this case, when the complaint was filed in this case, according to Curran, he was a citizen of Maryland. Thus, there was not diversity jurisdiction because

some of the defendants were also citizens of Maryland. Curran now alleges in his second amended complaint that he is a citizen of North Carolina. But a change in Curran's citizenship after the original complaint was filed, does not support diversity jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574 (2004)("[T]he Court has never approved a deviation from the rule articulated by Chief Justice Marshall in 1829 that '[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.'")(quoting *Conolly v. Taylor*, 27 U.S. 556, 565 (1829)).

Because there was not complete diversity when this case was commenced, the Court does not have diversity jurisdiction.

**D. Since the Court Does Not Have Diversity Jurisdiction and the Federal Claims Should Be Dismissed, the Court Should Decline to Exercise Supplemental Jurisdiction over the State Law Claims Against the Zinnamosca Defendants.**

Although the Court does not have diversity jurisdiction over Curran's state law claims against the Zinnamosca defendants, the Court does have supplemental jurisdiction over those state law claims.

Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed

all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the court disposes of the federal claims. Accordingly, we recommend that, in the absence of a viable federal claim, the court decline to exercise supplemental jurisdiction over the state law claims against the Zinnamosca defendants.

**E. Curran Should Not Be Granted Leave to Amend.**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.* Curran was previously given leave to amend, and although he filed an amended complaint, he still failed to state a federal claim upon which relief can be granted. Further leave to amend would be futile.

**V. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the Zinnamosca defendants' motion (doc. 48) to dismiss the second amended complaint be granted, that the federal claims against the Zinnamosca defendants be dismissed with prejudice, and that the Court decline to exercise supplemental jurisdiction over the state law claims against the Zinnamosca defendants. It is further recommended that Curran's motion (doc. 50) to withdraw his second amended complaint be granted as to the defendants other than the Zinnamosca defendants.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of November, 2014.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge